I2FOGG, Judge.
By this appeal, the State of Louisiana, Department of Culture, Recreation and Tourism (DCRT) and Fidelity and Deposit Company of Maryland (Fidelity) seek review of a summary judgment dismissing their claims against City National Bank (CNB) for breach of warranties of transfer and presentment.
The following facts are undisputed. Debra Dyson was employed as the budget manager at DCRT. One of her responsibilities was to act as custodian of DCRT’s Louisiana Travel & Tourism Summit Account, which was maintained at Baton Rouge Bank & Trust Company (the “Summit Account”). Although she was not an authorized signatory on the Summit Account, Dyson was the sole, physical custodian of the account.
During her tenure as DCRT budget manager, Dyson developed a scheme whereby she misappropriated funds from DCRT. To implement her scheme, Dyson submitted to DCRT fictitious invoices from actual DCRT vendors. DCRT then issued checks drawn on DCRT’s general operating account at CNB (the “FACS Account”) payable to the vendors for payment of the invoices. Dyson acquired possession of those checks and endorsed the checks by either stamping “for deposit only, Baton Rouge Bank & Trust Company, Account No. 0204692” or noting “for deposit only” followed by an account number other than the account number of the named payee. FACS Account checks, totaling over $168,000.00, were then deposited into the Summit Account, where Dyson forged the signature of an authorized Summit Account signatory in drawing checks payable directly to herself and various personal creditors.
DCRT and Fidelity, DCRT’s bonding company, filed suit against CNB and Baton Rouge Bank & Trust Company (BRB), seeking to recover the losses suffered as a result of Dyson’s embezzlement. DCRT alleged that CNB failed to exercise ordinary care and due diligence by charging the FACS Account for items which were not properly payable and that the bank breached various warranties of transfer and presentment.
UCNB filed a motion for summary judgment, contending that even if plaintiffs could establish that the checks were not properly payable or that CNB breached warranties of transfer and presentment, there is no genuine issue of material fact that plaintiffs have suffered no injury, loss or damage as a result of any act or admission by CNB. CNB asserted that the plaintiffs have no recoverable damages against CNB for its payment of any of the aforementioned items, because the payment of the said items resulted only in the transfer of funds from the FACS Account (which was owned and controlled by DCRT) to the Summit Account (which was also owned and controlled by DCRT). As the funds of both accounts were under the control of DCRT, the payment of said items produced no direct loss or damage to DCRT.
The trial court granted CNB’s motion for summary judgment and dismissed plaintiffs’ action as to CNB. DCRT and Fidelity appeal that judgment, contending they suffered a loss as a result of CNB’s improper payment of checks which were not properly due. They cite, among others, the case of Morgan v. First National Bank in Albuquerque, 58 N.M. 730, 276 P.2d 504 (1954) (wherein the court held that a bank’s action in allowing funds to be fraudulently placed in an account which was available to the embezzler was *830 sufficiently related to the loss to find the bank hable). In response, CNB refers us to cases from various other states which support its position. Although it is probably the minority view nationally, we find merit to the argument of the appellants and are persuaded by the jurisprudence they cited. Therefore, for the following reasons, we reverse the granting of summary judgment in favor of CNB.
Banks have a duty to their customers not to pay checks which are not properly payable. LSA-R.S. 10:4-101 et seq. CNB’s actions in honoring the checks without the endorsement of the payee served as the basis for Dyson’s embezzlement scheme. In order for Dyson to forge the checks on the Summit Account, she first needed to deposit funds into the Summit Account. If CNB had fulfilled its duty and refused to pay the checks, the $168,000.00 would not have been deposited into the Summit Account and thus would not have been ^available to embezzle. It is possible from the facts presented that if the checks had been rejected by CNB for lack of the proper endorsement, the whole scheme would have come to light. Additionally, the proceeds ultimately accrued to the benefit of the embezzler, not DCRT. Therefore, the transfer from one DCRT account to another did not constitute a simple transfer without any resulting loss. The trial court erred in concluding that the plaintiffs were not damaged by the actions of CNB and in granting summary judgment in CNB’s favor.
For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of CNB is reversed and the case is remanded to the trial court for further proceedings. Costs of this appeal are assessed against CNB.
REVERSED AND REMANDED.